The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good morning. We are here on case number 4-2-3-0-2-3-9. That's People v. Jefferson. We're all counsel for the appellate. Please identify yourself for the record. Judge for the record, I'm sorry, Your Honor, for the record, my name is Patrick Sullivan. I'm an attorney at the Office of the State Appellate Defender, and I represent the appellant, Sherry Jefferson, in this matter. Okay, thank you. And counsel for the appellee. Yes, thank you, Your Honor. David Robinson from the appellate prosecutor, along with a 7-Eleven student from our legal clinic, Emma Overton. Thank you. Mr. Sullivan, are you ready to proceed with your argument? Judge, I'm sorry. Your Honor, yes, I am. Okay, great. Please do so. May it please the Court. My name is Patrick Sullivan. I'm an attorney at the Office of the State Appellate Defender, and I represent the appellant, Sherry Jefferson, in this matter. Your Honors, I'm going to start with the discussion of Argument 1 in our briefing today, and if I do have the time, I will move on to a brief discussion of Argument 2. Argument 1 was, as I believe, the main focus of our brief and more of the reason we requested oral argument in this matter. The substance of this case, Sherry Jefferson was convicted of violating a stock and no contact order that expressly prohibited her from making non-consensual contact with Nicole Hill. The state failed to prove that type of contact ever occurred. Regarding what did happen between Ms. Jefferson and Ms. Hill on that day in 2022, the state presented three pieces of evidence, three main categories. The first was Ms. Hill's testimony as to what happened between her and Ms. Jefferson. The second was the video Ms. Hill herself shot of the interaction between the two, and the third piece of evidence was the responding officer's testimony as to what both Ms. Jefferson and Ms. Hill told him that day. That's Officer Torres. Now, where all of the state's evidence but Ms. Hill's testimony undermined and impeached Ms. Hill's testimony about what outside of that video occurred between those two parties that day, what Ms. Hill told the court at trial simply cannot be believed. In light of the video and in light of Officer Torres's testimony, she was impeached significantly, Ms. Hill, and her testimony at trial was too improbable to believe. Based on the Illinois Appellate Court's ruling in People v. Shaw, this court is more than permitted, or I guess let me just say permitted, to view the video Ms. Hill shot. I would argue afresh, and to view Ms. Hill's testimony in light of that video and viewing it in light of the other testimony from Officer Torres, it just can't support a we are arguing that the evidence was insufficient to support Ms. Jefferson's conviction. We're asking this court... Counsel, I'd like to stop you there. As I read through here, it appears to me, and correct me if I'm wrong, that the court actually found defendant not guilty on count one but guilty on count two. Is that correct? That's correct. What does count two... what was it that the actions for which a defendant was convicted, what was that as labeled or set forth in the charging instrument? Because that seems to me to be kind of a threshold issue here, as well as a combination as to count one not guilty and count two guilty. If you could clarify what I would appreciate. Yes, your honor. As I recall in the in the charging document, count two alleged that Ms. Jefferson did knowingly commit an act which was prohibited by the order and that said harassed a protected party, Nicole Hill, by yelling at her. Now, there is an issue there, and one issue is that... Well, let me stop you there. Yes. By yelling at her, what was the yelling that was presented through evidence that we're talking about here? So through evidence, there were, I think, I'd say two main accounts. One was what we see on the video, and that's essentially Ms. Jefferson yelling, move from behind my car with some expletives. There's also Ms. Hill's testimony of what she says occurred prior to video rolling, and those are some other insults that she says Ms. Jefferson leveled at her, and she came up to her car. Her Ms. Hill's testimony said some more derogatory language than just what appears on the video, and that's the testimony we're saying was too improbable to be believed in light of the state's other evidence in this case. I'm being very specific. I thought what was yelled was that her mom was a crackhead, and that was yelled that you're also a crackhead, and that she was going to beat me up. Is that it or not, or am I getting mixed up? That's absolutely it. Is that what the court found defendant guilty of, making those statements? How I understand the trial court's ruling was that she was found guilty of making contact that was prohibited with Ms. Hill. I don't think the court found her guilty of the work. I thought we just established count two was yelling. Yes. We just talked about what the yelling was, and now you're saying it was contact not the yelling. So I think part of the issue here, your honor, is that the offense of violating a stock and no contact order is actually defined as taking some action or some inaction that's prohibited by the court. Okay. I don't want to interrupt any more of your argument. Go ahead with it. I'm right back to where I was. It sounds like to me you're wanting to take on count one for which defendant was not even found guilty. I was focusing on count two, but please continue with your argument. You only have so many minutes. I've taken enough of your time. I'm sorry, your honor. Just to avoid any misunderstanding, I'm in no way taking on count one. I think, yes, that is the case that the trial court found Ms. Jefferson not guilty of being within 500 feet knowingly of Ms. Hill. I think that actually folds into a reason why. I mean, I think it is inconsistent with the finding that she made contact of a type that was partly to our argument in this case as to why the evidence was insufficient to support count two. So go to that. What is improbable about Ms. Hill's testimony that a defendant came up to her window and yelled at her? So there are a couple of reasons Ms. Hill shouldn't be believed. The first reason is that Ms. Hill says on the stand, part of her testimony is that Ms. Jefferson, after she started rolling the video, so this is key to our understanding of this case, that on the stand, Ms. Hill says, after the video starts, we should see on that video a crowd forming. We should see Ms. Jefferson calling Ms. Hill and her mother a crackhead. We should see Ms. Jefferson saying, I'm going to beat you up. And we should see a third person coming out and asking, what's going on here? We see none of that. So I want to be clear, there are two parts of Ms. Hill's testimony that she gives the trial. One is before the video starts rolling. The other is after the video. She does say that before the video, Ms. Jefferson comes up to her, comes up to her car, calls her a crackhead and the like. But she says, then I, I think I have the quote here. It's, I was trying to find some way to videotape her. This is on the record 16. When I finally got it, I was backing out. As I was backing out, it was so loud, she collected a crowd, et cetera. That goes into a whole litany of things that per Ms. Hill should be on that video and they're not. That's part of why Ms. Hill is not credible. Unless they're behind the viewpoint of the camera, right? Ms. Hill's testimony was that she was there, but we don't see her on the video. And the reason is because she was behind the camera. So there could have been other people gathered there, but the shot is fairly tight on defendant's vehicle that that shouldn't really trouble us, should it? That we don't see other people within the frame. The way I read Ms. Hill's testimony going through this record, it was a different world of occurrence than what occurred on the videos. And so there's one big difference between what you think and what the trial judge thought. Why did the trial judge believe one party over the other? The trial judge had this evidence before. The trial judge listened and basically didn't find your client credible, but found Ms. Hill credible. Your Honor, I think that's a key point that I'd like to get to. I think the trial court misapplied the standard here of how it was supposed to view the contact at issue. The trial court specifically noted that Ms. Hill's consent stopped when the order of protection issued. And I think that is a misreading under, I would argue, People v. Davitt, and the kind of line of argument that flows in our briefing from Davitt of the order. The trial court should have read that order as Ms. Jefferson was prohibited from making contact that was not initiated by Ms. Hill or was beyond the bounds of Ms. Hill's consent. And the trial court found essentially that consensual aspect of what Ms. Jefferson couldn't do. What the trial court applied here was making that superfluous. So Mr. Sullivan, I understand your point. So for instance, if Ms. Hill had phoned your client, that would be her initiation of the contact. Obviously, then it'd be difficult to characterize that contact as unwanted or unpermitted or unconsented to by Ms. Hill. But in this case, there is evidence that it was your client, according to Ms. Hill, that it was your client who initiated this contact by going up to Ms. Hill's vehicle. If the trial court believes that, then the trial court's assessment here is correct. Isn't that right? I think if that were what happened, if Ms. Jefferson, if the trial court believed that Ms. Jefferson had unprovoked walked up to Ms. Hill's vehicle without initiation or invitation from Ms. Hill and done what Ms. Hill said she did, I think that would have been a violation of this order. But I want to delineate, too, the difference between Ms. Hill's, and maybe I've belabored this a little, but the difference between her testimony and the video. And I would submit that what we see on the video under the order Ms. Jefferson was subject to was not uninitiated or non-consensual contact. Correct. But doesn't Ms. Hill's testimony tell us that that initial contact happened before the video? So the video wouldn't tell us much one way or the other. It does. That was Ms. Hill's testimony. And that's where those pieces of her testimony were simply too improbable to believe and were significantly impeached by what, like I said, what I think we should have seen on the video as a continuation of this interaction. And I want to get to one other thing by Officer Torres' testimony as well here. In this matter, there were two ways Officer Torres' testimony at trial also impeached what Ms. Hill said on the stand. According to Officer Torres, Ms. Hill never told him. On the day of this occurrence, this incident in question, she never said anything about what happened before the video she showed him. That was part of Officer Torres' testimony. He said she only basically showed me the video, didn't say anything about Ms. Jefferson coming up to Ms. Hill. Number two was that Officer Torres testified on the stand that Ms. Hill never told him there was any contact or she did tell him there was contact, harassing, yelling inside the store. Ms. Hill is very clear on the stand. The only stuff that happened that I took issue with, the only words exchanged were outside the store. Those are two huge differences. And that's why we just cannot believe what Ms. Hill's saying happened prior to the video rolling. The video doesn't bear it out. And Officer Torres' testimony about what she told him that day is completely inconsistent. And these are material differences. And that's where I'd point to the case of People v. Shaw, where when we have these repeated, repeated inconsistencies between the rest of the evidence of video this court can view afresh, that can lead to, and in this case does lead to, testimony from a single eyewitness that was not positive and credible. If your honors don't have any more questions on that one argument, I would want to move quickly to argument two. But if there's anything further on that point, I'm happy to discuss it. On argument two, that does lead from the trial court's finding that this was a credibility contest. If it were a credibility contest, then Ms. Harris' testimony, the witness who should have been called into this trial, was undoubtedly material. People v. Ward tells us that there are three main factors that a trial court is to consider when granting or not granting a motion for continuance to bring a witness into trial. The first of those is the defense counsel's diligence. Second is materiality of the witness's proffer testimony. Third is prejudice. In this case, if credibility were the big issue, Ms. Jefferson's story against Ms. Hill's story, then a corroborating witness of the defendant has to be material. In People v. McLaurin, materiality is defined as evidence that has any tendency to raise a reasonable doubt of defendant's guilt. That's 184 ILL 2D 58 at 89, 1998. I find it very hard to come to the conclusion, and I would urge this court to... Mr. Sullivan, what in the record tells us that the witness would corroborate the defendant's testimony? The proffer of defense counsel for Ms. Jefferson makes it, to my mind, clear that of the material parts of Ms. Jefferson's case, of the incriminating testimony that Ms. Hill leveled against her, Ms. Kiana Harris would have tended to negate. She would have corroborated Ms. Jefferson's Ms. Hill is the one who initiated this contact, and she would have corroborated Ms. Jefferson's account that she herself did not initiate it, that Ms. Hill was the one who started talking, who had her car behind Ms. Jefferson's. As far as the car, the video does tell us something there. The video tells us that that car appears to be moving, not parked behind defendant's vehicle, so it's sort of an instantaneous obstruction that had your client waited in the car for a few more seconds, there wouldn't have been any obstruction. Your Honor, I would characterize the video differently. Ms. Hill's car, as she says, is rolling, I would say quite slow. At the first few seconds of the video, it does appear that it is, that it may have been stopped, it may have been rolling the whole time, but it's at a very low rate of speed, and that's where a third-party witness that could have corroborated Ms. Jefferson's account that Ms. Hill was stopped behind her would have been highly material, and the lack of allowing that witness to come in and testify as to that fact was prejudicial. I would also just want to note that I think People v. Walker does apply here as well, and even just for the court's failure to know any reason to give any real rationale for its denial of this motion for continuance, I think that's an abdication of discretion, that's not just an abuse. The trial court here before the proffer indicated that it was not ready to grant the motion for continuance, and then after the proffer gave zero reasons why. And I would also- Counsel, the trial court said, given the other testimony, what I know and what I've heard, I don't see how this testimony could help. That sounds like using discretion to evaluate what has occurred, and the proffer, and says it wouldn't help. I would say that's a, that that is a use of discretion, but an abuse of discretion as well. And it is actually a conflating of the trial court's two hats that it's wearing. It's a judicial referee, as well as a fact finder here on the trial court. And I think it was substituting its fact finding for a sober look at, could a corroborating witness of the defendant's story be material? And the answer is always yes. What did Officer Torres say about this additional witness? Officer Torres, as I recall, did not speak to this additional witness. But the additional witness says, I told the police officer I wanted to give a statement. Yes. But basically he wasn't interested. Yeah. Well, if the trial judge believes Officer Torres, then what is he to do about this person that says, I came forward and offered to make a statement, but the officer wasn't interested. I mean, those two things are contradictory as well, aren't they? I think the officer is not being interested on the scene and talking to Ms. Harris does not necessarily mean that Ms. Harris didn't have material testimony to bear on this matter. The officer could have made a misjudgment on the scene as to how important her testimony was. He didn't say it wasn't important. He said he didn't have any contact with. But your other witness claims that she did. She told him she would give him a statement. If I may just have a second, Your Honor, and then I'll wrap up. My account and my reading of what Officer Torres said on the stand was that he did see a lady in the background that does appear to be Kiana Harris, just from a global reading of this case. He didn't speak to her, but I don't recall that he made any explicit determination on the record of what her testimony would or wouldn't have been or how material it may or may not have been. Isn't that shown in the video? We see him talking to the defendant. We see the other woman in the frame, and he then arrests the defendant after speaking with the defendant. Isn't that all kind of captured? On the body-worn camera? Yeah. Officer Torres was, to my mind, clear about why he arrested Ms. Jefferson, and I think it was pretty straightforward. He saw the video, and Ms. Jefferson admitted there was some contact between the two parties. And on that, I mean, Officer Torres is not the court, and he's not in a position to make legal findings. He arrests based on probable cause. Understood, but there didn't appear to be any offer to give a statement from the witness, right? At that point, there was just Ms. Jefferson talking. Yeah, so what other point would there be? I mean, it's on the body cam. Yeah. I mean, I can say Ms. Harris did not speak with Officer Torres. Why I think is unclear, but in any case, come trial time, she had what was proffered to be material testimony to bear. Mr. Sullivan, you're out of time. You'll have rebuttal. Ms. Overton, are you ready to proceed with your argument? Yes. Please do so. May it please the court, counsel, Emma Overton, 711 student, on behalf of the Appellate Prosecutor's Office. This is a case about holding individuals accountable when their conduct violates protective orders and upholding the exercise of discretionary powers afforded to circuit judges. The circuit court correctly found that the state proved beyond a reasonable doubt that the defendant engaged in conduct in violation of an active stalking no contact order. And second, the court properly refused to grant the defendant's motion for a continuance to secure the appearance of an additional witness. For those reasons, this court should uphold the rulings of the circuit court and affirm the defendant's conviction. Turning first to the evidence of contact between the defendant and the protected party in this case was clearly sufficient to prove the defendant's guilt. This court in McNally addressed a stalking no contact order and explained that the law does not require the victim to contact the protected party to contact that they do not want conduct. In Woodruff, the court explained that there are two elements necessary to sustain a conviction under the stalking no contact order act. First, the defendant needs to have knowingly committed a prohibited act. And second, that the violation occurred after the defendant was served with notice of the order. In this case, let me stop you here. Tell us what you think the prohibited act was that the trial court found. The prohibited act in this case was which was the exchange of words that occurred between the defendant and the protected party outside of the grocery store, a portion of which was caught on the 23 second video recorded by the protected party. That conduct under the terms of the stalking no contact order, which is broad enough to prohibit any contact, including verbal contact between two parties, was in violation. That's not quite what the order says, right? It says non-consensual. Your Honor, the order does include a consent element, but ahead of the consent element, what the order makes clear is that any contact between the protected party and the person who is served with notice of the order, in this case, the defendant, that's a violation. That's a problem. If we're going to look to the more stringent part of the order, as opposed to the one that's a little more flexible, if the order says non-consented contact, so for instance, if Ms. Hill had called the defendant, there's an implication there that she's consenting to that contact, right? That's correct, Your Honor. Yes, but what the order also says is that if the contact is in disregard of the victim's expressed desire to not have contact, and that is what the trial judge relied on in making her findings, in noting that by virtue of there being an active stalking no contact order in place, that was enough to communicate. That's a little circular. If the defendant was in the parking lot and it was Hill that initiated the conversation, Hill went up to her and started speaking with her or yelling at her, that would suggest that really it's like that phone call, that the protective party initiated the contact, and so maybe it isn't non-consensual. Isn't the judge's view of this maybe too narrow to say that consent is determined before the order is entered? Well, no, Your Honor, and the reason for that being is the example that you just provided. Yes, it's correct that if Ms. Hill, the protected party, had herself initiated contact, that would be an entirely different matter, but here we have evidence on the record at trial showing that Ms. Hill did not initiate that contact with Ms. Jefferson, and rather the video evidence in addition to the testimony bolsters that fact, showing that Ms. Jefferson initiated that contact, and what's more, we also have on the record, pages 63 and 64, showing that Ms. Jefferson herself at trial on the stand admitted that she knew she was not supposed to have contact with Ms. Hill, but that she did and that she yelled at Ms. Hill in that parking lot, and so the trial judge took all of those factors into consideration when making this determination that there was a violation of the order on its face because there was contact here that Ms. Hill herself did not initiate and then did not consent to once it occurred. If the defendant put her car behind the protected party's car so that she couldn't leave, would that sort of indicate that the contact was initiated by Ms. Hill? That may speak, if that were the case, that may speak to more of an initiation on Ms. Hill's part, but in this case, we know that prior to the video recording showing the car, what also occurred based on testimony was an is to say that the distance limitation was a violation of the order. All that the trial judge relied on was the exchange of words that occurred out in the parking lot, a portion of which was caught on video, and so when we take those factors together, by virtue of there being an active stalking no contact order in place here, there was a clear violation, and Ms. Jefferson herself admitted on the stand that she engaged in a violation of an order by yelling at Ms. Hill, and that of itself should have been enough for the trial court to make its determination, but that's not all that the trial court relied on. The trial court also took the testimony of the defendant, testimony of the protected party, and the video evidence we have here all into account when making this decision, and this court under Woodruff clearly explained that all that is needed to show a violation of stalking no contact order is knowledge and service of a stand, and we know that there was a valid order in place that's not disputed anywhere in the record, and so because of that, because we have defendant's admission at trial, and because there was a valid order in place, there was a clear violation here of the stalking no contact order. Now turning to the second issue, the denial of the motion to continue, there was not an abuse of discretion when the trial court denied defendant's motion to continue, and this did not prejudice the defendant. In James, this court explained that the decision to grant or deny a motion is within the sound discretion of the trial court, and is reviewed only for an abuse of discretion. The trial court did not abuse its discretion in this case, and we know that. How could the trial court have known that the witness wouldn't have made any difference? The trial court knew that the witness was not a material witness because the trial to make a proffer before it determined whether or not to grant or deny the motion to continue. Defense counsel was allowed to make a proffer, and the entirety of that proffer is included in the record, and what defense counsel clearly outlines in the proffer is that all that the additional witness, Ms. Harris, would have testified to would have corroborated what had already been testified to by the defendant on the stand. The defense counsel made no showing in the testimony were the additional witness allowed to appear, and after the trial court judge took that proffer, accepted it, and that informed her determination of whether or not to grant or deny the motion to continue, and under the ward factors, that is all the trial court judge was required to do in evaluating the materiality of an additional witness. Ward clearly outlines, as defense counsel stated, diligence, materiality, and prejudice are the three crucial factors that a reviewing court needs to consider when evaluating whether or not a defendant was prejudiced in a denial of a motion to continue. Let me stop you there. How long would have it taken to produce this witness if the trial court granted, you know, an hour or two continuance? Your honor, it's unclear from the record, but what we can infer from the record, it may be relevant, but it is not a factor that is outlined in ward regarding materiality and regarding diligence. Now, we are not disputing diligence. We know that defense counsel was diligence in trying to secure the appearance of this witness. The witness was under subpoena at time of trial. That was not an issue here. However, what is indicated in the record is that prior to trial starting at the very outset of trial, the trial judge clearly asked both parties if they were ready to proceed, and the state made a motion at that point to exclude any witnesses from the courtroom, which the trial judge granted. At no point in that initiation of trial did defense counsel stop the court and explain that its additional witness was not present, that it needed more time. Did defense counsel know that the witness was not present? From the record, your honor, we don't know whether defense counsel knew. Isn't that important? It could be relevant to inform defense counsel's actions following that, but if defense counsel, for example, knew that Ms. Harris was not available at the outset of trial, defense counsel could have at that point brought up a motion to continue. From the record, defense counsel did not. Defense counsel waited. I agree with that, but that's why I asked, did defense counsel know? Not if she knew. Did defense counsel know? The record doesn't reflect that. The record doesn't reflect that. What the record does reflect, your honor. I'm also bothered that initially when the case was called to trial, the state asked for a continuance, and over objection it was given, and yet I can't tell since the subpoena was carried over whether witness Harris or the witness even knew anything about the subpoena being carried over, and to me that seems like it's important. There's a record where the court said, okay, Ms. Harris, you've been subpoenaed. The subpoena carries over. You must be here in court the next time this case is called to trial. Is there anything in the record about that? Yes, your honor. The record actually does indicate that when that motion to continue was allowed and all witness subpoenas were also extended to March 8th, and so Ms. Harris... They're all extended. How is that done? How is that done in such a way that Harris would know? That's what I want to clarify. Right. How is it communicated? Your honor, the record is unclear on that point of the exact service or notice that the additional subpoena, the extension of those subpoenas was communicated by. I do not have that information in the record, but what I can say is that it was clear when the case did go to trial on March 8th that all prior witness subpoenas were extended by the court to that additional date. Do we know if Harris was there on the earlier date? It's not indicated in the record whether or not Ms. Harris appeared at that first date. But everyone else did appear at that first date. Defense counsel, the defendant, the protected party, they were all at court at that first date that then was continued. But what's really relevant here is whether or not the additional witness, Ms. Harris's testimony, would have been material. That's what this court evaluates in ward when it considers whether or not there's prejudice to a defendant regarding a motion to continue. And in McLaurin, the Supreme Court clearly explained that materiality is not determined by whether the evidence might have the defense, but whether it's reasonably likely that the evidence would have affected the outcome of the case. And building on McLaurin, in Peoples, this court rejected a claim that a trial court erred when it denied the defendant's request for a continuance that would have only corroborated a defense witness's testimony. The court in Peoples explained that the defendant had failed to show that the witness's testimony was material and might have affected the jury's verdict. That's very much the case here. Based on defense counsel's proffer, which clearly outlined that all that Ms. Harris would have testified to when she called defense counsel's office ahead of trial, all that Ms. Harris said confirmed and corroborated the defendant's side of the story. The defendant was allowed to testify at trial. She gave her full testimony at trial, and only after that did defense counsel make a motion to continue to allow Ms. Harris to come in, at which point the trial court asked for a proffer. So, the trial court judge followed all of the correct procedural steps and accepted defense counsel's proffer before it made its determination that all that Ms. Harris would have testified to would have been cumulative. And what's important here is that cumulative testimony is not material testimony. This court has recognized as much, and the Illinois Supreme Court has recognized as much. And while repetition of the defendant's side of the story might have helped the defense's case, it was not reasonably likely that it would have affected a verdict in this case at trial. And here, the materiality and prejudice factors of Ward weigh against the defendant and support the trial court's discretion that it exercised when it denied the motion to continue to secure the presence of an additional defense witness. And therefore, the trial court's denial was not an abuse of discretion. If there are no further... To where I started off when I asked questions for Mr. Sullivan about this count, too, and it appears that the trial judge relied upon the testimony from Hill that she started yelling that she hated me, she hated my mom, she wished I was dead, she was glad my mom was dead, my mom was a crackhead, I'm a crackhead, and that she was going to beat me up. And she can't wait to beat me up. Now, here's my question. If Harris had come in and testified that none of that occurred, are you still saying that would not be material, not be something that the trial court should have heard in this case? No, Your Honor, that's not our position. If defense counsel's proffer had included that information that Ms. Harris would have had new information to give beyond just pure corroboration of what the defendant had already testified to understand, then that would have been material testimony. But defense counsel's proffer did not include that information. All the defense counsel said in its proffer was that it was confirming and corroborating the defendant's side of the story. And additionally, I think it's important to note that this additional witness, Ms. Harris, was not just a neutral third-party observer, it was the defendant's cousin. And I think that's another factor that the trial court judge should have taken into account and did take into account knowing the facts of this case when it made its determination regarding the motion to continue. But doesn't Harris's corroboration of defendant also impeach the complaining witness? Not necessarily, Your Honor, because what we can rely on here, and the state's evidence is viewed in light most favorable on appeal here, and what we can rely on is the state's evidence that was testimony. Now, there was testimony presented at trial, but there was also evidence by the video that was presented at trial, the 23-second video, and by the testimony of Officer Torres, the responding officer. And when we take all of that into account, regardless of whether or not an additional witness would have provided impeachment value, what we can see is based on what was presented at trial, there was clearly enough evidence spread beyond just pure testimony that would support defendant's conviction and also inform the trial court judge's determination of whether or not to allow this motion to continue. And so this was not just a pure he said, she said situation here. It was really backed up by not only video evidence, but also by evidence of a responding police officer. At this time, if there are no further questions, because the state proved the defendant's guilt beyond a reasonable doubt, and because the denying defense counsel's motion to continue, this court should affirm the conviction of the defendant. Thank you. Counsel, unfortunately, I still have another question. Are we here viewing this case under a plain error review, right? That's correct, Your Honor. Yes. Okay, well, what's our standard? How does that play into all this? Your Honor, under the standard of review, the evidence presented at trial is viewed in the most favorable to the state. And then regarding the trial court judge's denial of the motion to continue, that's reviewed for an abuse of discretion. And when we take both of those factors into account, most favorable to the state on issue one, it's clear here that the evidence presented at trial beyond just testimony, the video evidence, the officer's testimony was sufficient to prove guilt in violation of stalking no contact order. And then when we look abuse of discretion for issue two, we can also see that the trial court judge did not engage in abuse of discretion because she clearly followed all the procedural steps she needed to, including accepting a proffer from defense counsel about that additional witness's testimony, what the content of it would have been. Okay. Are you saying then we don't even get to decide whether there's plain error because there's no error? Is that what you're saying? Well, that's correct, Your Honor. Yes. And the defendant's conviction here can be affirmed because the state clearly proved at trial beyond a reasonable doubt that there was a violation of the stalking no contact order. Importantly here, beyond just the testimony of the protected party, we have testimony from the defendant on the stand admitting that she not only had knowledge that there was a valid and active order in place, but that she knew under the terms of the order that she was not allowed to have any contact with the protected party and nevertheless yelled at the protected party outside of this evidence. We also view the video evidence. We also hear Officer Torres' testimony that shows that the state proved beyond a reasonable doubt that Ms. Jefferson violated the stalking no contact order. Okay. I see no further questions. Mr. Suleman, do you have any rebuttal? I do, Your Honor. Thank you. I just have a few points I want to address. First, running around his initial or kind of initial questioning in my argument about the charging document and what exactly, if I understand it correctly, what conduct here the court or the charged as having occurred in violation of the order. I think that does point to one other issue that admittedly I would say was not fully briefed, but this order didn't actually prohibit yelling or harassing. It was contact that was not consensual. So, for Ms. Hill... Counsel, isn't yelling just the form the contact took? Yes, but I don't think there's a complete overlap between... I mean, if she had gone up and spoken to the protected party in a quiet voice, that still prohibited contact. Yes. In any case, I would point out that there was no contact. I would point out that there was no contact. Second, the state in the argument did list what it found were the elements of this offense, knowledge and service of a valid order, but there also has to be a substance of violation, something that occurred that was prohibited, that someone did that was prohibited. Counsel, if the trial court believed the victim, then saying those things that were purportedly said is clearly an element of contact. Yes. You get to call people bad names and swear at them and harass them in any way. Yes, I would agree with that. If she said, move your car, bitch, that would be a violation of the no contact order. Would it not? Your Honor, the order that was served on Ms. Jefferson, I would say, as we see in the video, no. This is a shield, not a sword. I do not think that gives Ms. Hill license to park her car or to slowly move her car or to park and then slowly move her car right behind Ms. Jefferson's car and then expect Ms. Jefferson to say nothing. I think that's a reasonable response to an initiation of contact, and I don't see how we can read that action of going inside the store, coming outside, waiting five minutes. Somehow her car ends up right behind Ms. Jefferson's car when the video starts rolling five minutes later. I think it's hard to believe that's not an initiation of contact to the extent of move your car. Bitch, I mean, her car's there. And very quickly, I would just say, regarding the point of subpoenas, I did also see that the initial subpoena was served on Ms. Harris. So at some point, she was served in hand, and I think that's a factor here. It's not clear, to my reading or the state's reading, whether she was there on the first trial date, but there was certainly a continuance granted. Isn't it incumbent upon the attorney that issued the subpoena to communicate to a witness that there's a new trial date? And doesn't the record leave us kind of hanging as to whether that happened? It does, but the state concedes myself. I think that's not an unreasonable standard. How is it that you get to go into the trial and wait till the end before you make that motion? Why don't you tell the judge at the beginning? I mean, obviously he didn't see her there because she wasn't there. So how does he not raise that at the beginning? I think for all we know, defense counsel thought she was there. That's not confirmed or denied by the record, but that's a plausible reading of what went on here, I think. There was no continuance asked for the first date. And then just two more quick points. Your honors did raise the issue of plain air as to the continuance issue. We initially briefed that having in mind a plain air doctrine, a way of reaching the issue. However, I didn't see in the state's briefing that they argued the issue was not preserved. So I would actually urge this court to find the issue was preserved given the motion defendant made. And given the nature, this was a misdemeanor trial. And I'm not sure how practicable it would have been to put this in a post-trial motion. And then the last thing that I want to just stress is that with regard to issue two, the state says this is beyond pure testimony. It was not just word against word. There was all this other evidence in terms of the video, Officer Torres' testimony that supported what Ms. Hill had to say. But the state can't have both ways. Officer Torres also said he heard Ms. Harris say, I wasn't paying attention. So how valuable is her now proffer of testimony when she says, or the officer on the scene said, she said she wasn't paying attention. That may be what Officer Torres heard and reported. Ms. Harris could have had a very different recollection or experience of what happened and based on the proffer she did. But the state, my point is the state can't have it both ways. For argument one, we want to believe everything Ms. Hill says as opposed to Ms. Jefferson. For argument two, it's not just a credibility contest. There's all this other evidence that supports Ms. Hill. Where if you really look at the rest of that evidence, it does not line up with Ms. Hill's testimony about what occurred prior to the video rolling. Okay, Mr. Sullivan, you are out of time. Thanks to both of you for your arguments. The case is now submitted and the court stands in recess until further call.